UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6211CR-HURLEY

UNITED STATES OF AMERICA,

vs.

THOMAS NAROG,
    Defendant.
_____/

## DEFENDANT'S MOTION FOR ADDITIONAL DISCOVERY AND SPECIFIC REQUEST FOR PRODUCTION OF ALL BRADY/AGURS FAVORABLE MATERIAL AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, through undersigned counsel, and moves that this Court enter an order directing the Government to make inquiry and disclose to counsel for Defendant all material within the possession, custody or control of the Government, or the existence of which is known to the Government, that is responsive to the following requests:

1.    Written or recorded statements or any memorandum, notes or other writings pertaining to any oral statements made by any co-defendant or any unindicted co-conspirator or copies of each such statement, memoranda, notes or other writings as well as those of various other employees of various drug manufactures that may have worked with the DEA in this pseudoephedrine investigation, including all synopses of the involvement of the DEA and particularly those memorandums noting the DEA approved the shipping of drugs to the Defendant by various manufactures.

2.    The substance of each oral statement made by an co-defendant or any unindicted co-conspirator before or after his or her arrest, detention or deportation in response to interrogation by then known government or state agents particularly to assist in the receipt of pseudoephedrine by the Defendant or in the transport of same.

3.      Any logs, tapes, transcripts, notes, memoranda or other writing concerning any conversation overheard or recorded, clandestinely or otherwise, by any investigative or prosecutive agent of the United States Government with any co-defendant or any unindicted co-conspirator in this case.

4.      Recorded testimony of any co-defendant and/or claimed co-conspirator before a grand jury which relates to the offenses charged in the Indictment and more particularly those statements regarding the purchase of pseudoephedrine. The Defendant is not seeking "Jenks" material, but rather, materials that are within *Brady*, *Agurs* and *Kyle* due to the high level of involvement of the DEA in the offenses at bench.

5.      All reports, memoranda, summaries and notes prepared by persons other than agents of the Government in connection with the investigation of this case.

6.      All reports and records of the DEA regarding Seaside Pharmaceutical and correspondence therewith. Also sought are all DEA memos regarding Seaside and its purchase and attempted purchase of pseudoephedrine from various distributors throughout the country. All letters between the Defendant's lawyer and the DEA and any correspondence between the DEA and other agents regarding Seaside. Since the DEA authorized numerous sales either as part of a purported operation or otherwise these items are material to the Defendant.

7.      All information and material in any way favorable to Defendant on the issues of guilt or punishment that falls within the scope of Brady v. Maryland, 373 U.S. 83 (1963), United States v. Agurs, 427 U.S. 97 (1976) including the above in paragraph 6 and decisions construing Brady and Agurs, specifically including the following: (a) each inducement, payment or promise of immunity, leniency or preferential treatment with respect to either criminal prosecutions or civil proceedings made to any prospective Government witness by and government agent involved in this case. In this

2

request, Defendant seeks all information concerning each inducement, payment, promise or other consideration made by any government agent to any prospective government witness that would arguably reveal an interest or bias in each such witness in favor of the Government or against Defendant or act as an incentive to testify or to color testimony in a particular manner.

WHEREFORE, Defendant requests that this motion be granted.

## MEMORANDUM OF LAW

In this motion Defendant seeks production of documents and other information within the scope of Rule 16 of the Federal Rules of Criminal Procedure and the constitutional doctrines embodied within such decisions as <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>United States v. Agurs</u>, 427 U.S. 97 (1976), <u>United States v. Giglio</u>, 405 U.S. 150 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264 (1959). Specifically, Defendant seeks discovery of the following information no produced by the Government pursuant to the standing discovery order filed in this case: 1) statements made by co-defendants or unindicted co-conspirators; 2) inducements, payments or promises made by the government agent to any prospective Government witness; 3) any information arguably within the scope of <u>Brady</u> and <u>Agurs</u>, specifically including certain specific requests for impeachment evidence or other evidence bearing upon the interest, motive, prejudice or bias of each prospective Government witness; and 4) interview memoranda, notes and reports concerning interviews, discussions with persons, including unindicted co-conspirators, whom the Government has determined not to call as witnesses at trial as well as DEA memorandum as set out in Paragraph 6 such is material to the Defendant. The Defendant is fully aware of the Government's discovery obligations, but due to the unique and involved participation in this "operation" further matters are necessary. Defendant drafted these specific requests in as detailed a fashion as possible given the discovery rules in federal criminal trials. As in <u>Sellers v. Estelle</u>, 651 F.2d 1074, 1077 (5th Cir. 1981), these requests are detailed enough to constitute "specific" requests under <u>Agurs</u>. Each category of requested information will be separately discussed below.

## I. STATEMENTS OF CO-DEFENDANTS OR UNINDICTED CO-CONSPIRATORS

In seeking written, recorded or oral statements of co-defendants or unindicted co-conspirators or any memoranda, notes or other writings pertaining to such statements, Defendant

4

relies upon Rule 16(a)(1)(C) as authorization for the requested discovery. In this regard, Defendant submits that the information sought is "material to the preparation of their defense" or is "intended for use by the Government as evidence in chief at the trial". United States v. McMillan, 489 F.2d 299, 231 (7th Cir. 1972); United States v. Turkish, 458 F.Supp. 874, 882 (S.D.N.Y. 1978); Unites States v. Fine, 413 F.Supp. 740, 743 (D. Wisc. 1976). It is also essential to determine whether a severance is appropriate under Bruton v. United States, 391 U.S. 123 (1968) and its progeny.

Moreover, it is clear that Defendant's request for specified information concerning any unindicted co-conspirator in this case does not seek statements or other information protected from pre-trial disclosure pursuant to Rule 16(a)(2) of the Federal Rules of Criminal Procedure or the Jencks Act, 18 U.S.C. section 3500, but rather seeks disclosure of information required by Rule 16(a)(1)(C) and the constitutional dictates of Brady and Agurs.

## II. INDUCEMENTS, PAYMENTS OR PROMISES

As a part of the constitutional guarantee that every defendant shall receive a fair trial and due process of law, the Government is required to disclose any and all considerations which it has held out to a witness, or which the witness may anticipate will result in the event the witness cooperates with the Government in this case. See e.g. United States v. Tashman, 478 F.2d 129 (5th Cir. 1973); United States v. Harris, 462 F.2d 1033 (9th Cir. 1972). The rule requiring disclosure does not make a distinction between oral and written understandings or agreements. United States v. Joseph, 544 F.2d 282, 286 (5th Cir. 1976); Kircheis v. Long, 425 F.Supp. 505, 511 (D.Ala. 1976). In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court clearly held that the government's disclosure requirement is an affirmative duty that the government must discharge in a responsible manner in each case.

5

Application of the <u>Giglio</u> principles to this case requires the Government to undertake an appropriate inquiry to determine what consideration it has offered to its witnesses here. In this regard, the term "consideration" must be broadly defined to include any inducement, payment or promise[ of anything at all that represents something of value to the particular witness involved.

Disclosure of each such inducement, payment or promise is necessary to determine whether the government witnesses are biased clearly held that the Government's disclosure requirement is an affirmative duty that the Government is otherwise interested in the outcome of this litigation. It is clear that information concerning the witness(es)' possible vulnerability to prosecution or other sanction by the Government must be disclosed, since such potential sanctions reveal a possible motivation for the witness to testify favorably for the Government. See <u>United States v. Bonnano</u>, 430 F.2d 1060, 1062 (2d Cir. 1970), cert. denied, 400 U.S. 964 (1971); <u>United States v. Padgett</u>, 432 F.2d 701 (2d Cir. 1970). More recently, in <u>Davis v. Alaska</u>, 415 U.S. 307 (1974), the Supreme Court held that Defendant's constitutional right to confront his witnesses had been violated when the State of Alaska successfully prevented cross-examination of one of its important witnesses concerning his probationary status at the time* of the trial in that case. The court reasoned that the defendant should have been permitted to inquire concerning the witnesses' motives in testifying against defendant as disclosed by his decided interest in avoiding the possibility of parole revocation charges being lodged against him. See also <u>United States v. Love</u>, 599 F.2d 107, 108-09 (5th Cir. 1979); <u>United States v. Summers</u>, 598 F.2d 450, 459-61 (5th Cir. 1979); <u>United States v. Barrentine</u>, 591 F.2d 1069, 1981 (5th Cir. 1979).

Defendant submit that all such inducements, payments or promises made by government agents to prospective government witnesses in this case must be disclosed to Defendant prior to trial to insure that Defendant's Fifth and Sixth Amendment rights are not violated in this action. The

applicable law set forth above clearly requires the Government to disclose at this time the basis deal or other method by which the cooperation of one or more individuals was secured.

### III. IMPEACHMENT AND OTHER BRADY/AGURS FAVORABLE MATERIAL

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that the due process clause requires the Government to disclose to defendants upon request all material within its possession, custody or control favorable to the Defendant or harmful to its own case. The Brady duty imposed upon the Government extends to information which relates to the credibility of its witnesses as well as to other matters that more directly concern Defendant's guilt or innocence. See Napue v. Illinois, 360 U.S. 264 (1959); Giglio v. United States, supra. In Napue, the Supreme Court clearly underscored the importance of this requirement.

> The jury's estimate of the truthfulness and reliability of a given witness may be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

In United States v. Agurs, 427 U.S. 97 (1976), the Supreme Court revisited Brady and reaffirmed the basic tenets contained in that decision. However, the Agurs court placed a heavy responsibility upon defense counsel in the process. In this regard, meaningful sanctions now will only apply to Brady violations in instances where such violations occurred notwithstanding a "specific" request for the material in question filed by counsel for defendant in that particular case. See United States v. Gaston, 608 F.2d 607, 611-14 (5th Cir. 1979). Fortunately, the term "specific" has been given a generic rather than literal reading. See Sellers v. Estelle, 651 F.2d 1074, 1077 (5th Cir. 1081).

In Agurs the Supreme Court held that the rule enunciated in Brady applied differently in three separate situations. First, where the government knew or should have known that perjured

testimony was admitted at trial, a reversal of defendant's conviction is warranted "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. at 103-04. Second, where the government fails to respond to a specific pre-trial request for favorable material filed by defendant, reversal of the conviction will result if the "suppressed evidence might have affected the outcome of the trial." Id. at 104-07. Third, where the defense either makes no request for favorable material or files a general request for "all Brady material" or "anything exculpatory", reversal will be ordered only if "the omitted evidence creates a reasonable doubt that did not otherwise exist." Id. at 112.

Thus, in this motion, Defendant sets forth several specific requests for disclosure of material or information favorable to Defendant and concerning matters which would be admissible at trial or would lead to discovery of admissible evidence. In this regard, it is clear that in order to constitute "favorable material", such material does not need to directly bear upon primary issues of guilt or punishment, but rather may concern any aspect of the trial process, including impeachment or otherwise testing the credibility of government witnesses. See United State v. Mesa, 660 F.2d 1070, 1076 (5th Cir. Unit B, 1981); United States v. Martino 648 F.2d 367, 383-84 (5th Cir. 1981); United States v. Auten, 632 F.2d 478, 482 (5th Cir. 1978); United States v. Judon, 567 F.2d 1293 (5th Cir. 1978); Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968), cert. denied, 393 U.S. 1105 (1969). Defendant seeks pre-trial disclosure of the requested information to ensure that defense counsel will have enough time to properly prepare for trial and, therefore, to safeguard their Sixth Amendment right to effective assistance of counsel. Moreover, pre-trial disclosure has been mandated for that very reason. See United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir. 1976); Grant v. Alldredge, 498 F.2d 376, 382 (2d Cir. 1974).

As indicated above, Defendant seeks pre-trial disclosure of specific categories of information

which may reflect upon the credibility of the government witnesses expected to testify at the trial in this action. In his <u>Treatise on Evidence</u> McCormick identified five separate manners in which to attack a witness's credibility:

> There are five main lines of attack upon the credibility of a witness. The first, and probably the most effective and most frequently employed, is an attack by proof that frequently the witness on a previous occasion has made statements inconsistent with his present testimony. The second is an attack by showing that the witness is biased on account of emotional influences such as kinship for one party or hostility to another, or motives of pecuniary interest. The third is an attack upon the character of the witness. The fourth is an attack by showing a defect of capacity in the witness to observe, remember or recount the matters testified about. The fifth is proof by other witnesses that material facts are otherwise than as testified to by the witness under attack. <u>Id</u>. section 33 at 66 (2d Ed. 1972).

Thus, impeachment evidence may be derived from many different sources and may include attempts to discredit a witness's character or voracity, cross examination concerning bias, prejudice or improper motives for testifying, and, in appropriate cases, may also include presentation of extrinsic evidence to reveal such improper motives, bias or prejudice. See e.g. <u>United States v. Diecidue</u>, 603 F.2d 535, 550 (5th Cir. 1979). In <u>Diecidue</u>, the Fifth Circuit held:

> Extrinsic evidence of specific instances of a witness's conduct is generally not admissible to contradict his testimony on matters collateral to the issues in the case and so attack his credibility. See Federal Rules of Evidence, 608(b); <u>McCormick, Evidence</u>, 47 at 98 (2d Ed. 1972). The bias of a witness, however, is not a collateral matter and the party examining the witness <u>is not bound by his denial of acts tending to show this bias</u>.
>
> 3A <u>Wigmore, Evidence</u> section 948 at 783 (Chadbourn re.); <u>United States v. Robinson</u>, 174 U.S. App. D.C. 224, 227, 530 F.2d 1076, 1079 (D.C. Cir. 1976); <u>United States v. Harvey</u>, 547 F.2d 720, 722 (2d Cir. 1976). (Emphasis added.)

Accord, <u>United States v. Brown</u>, 547 F.2d 438, 445-46 (8th Cir. 1977); <u>United States v. Moore</u>, 529 F.2d 355, 357 (D.C. Cir. 1976); <u>Johnson v. Brewer</u>, 521 F.2d 556, 562 n.13 (8th Cir. 1975). See also

Advisory Committee Note to FRE 608(a).

A classic subject of impeachment is presented by Defendant's request for information reading prior felony convictions, juvenile adjudications and guilty verdicts, evidence of which would be admissible pursuant to Rule 609 of the Rules of Evidence of United States Courts and Magistrates (hereinafter referred to as the Federal Rules of Evidence). It is clear that Brady mandates disclosure of the requested information. See generally United States v. McCrane, 547 F.2d 204, 207-08 (3rd Cir. 1976); United States v. Carady, 466 F.2d 1191 (9th Cir. 1972) (per curiam); Beaudine v. United States, 368 F.2d 417, 421-22 (5th Cir. 197\66). See also State v. Morales, 630 F.2d 1015 (Ariz. 1981) (juvenile convictions). As a separate form of impeachment, Rule 608(b) of the Federal Rules of Evidence allows the court in its discretion to permit a defendant to cross examine a witness concerning specific instances of misconduct relating to the witness's credibility. According to McCormick, the purpose of such testimony is to attack the witness's character and not establish bias, interest or prejudice. See McCormick, Evidence 42 at 83 (2d Ed. 1972). As such, the requested information will have a definite impact on the credibility of important government witnesses and, therefore, should be ordered produced pursuant to Brady. United States v. Judon, supra, 567 F.2d 1293. Defendants also have requested production of documents and information relating to prior testimony of potential government witnesses concerning defendants or the facts of the case, specifically, including any such prior testimony that will in any way be inconsistent with the testimony of such witness will be present at trial. Of course, any such prior inconsistent statement would be admissible at trial as substantive evidence of the facts presented in the statement. See Rules 801(d)(1) and 806 of the Federal Rules of Evidence. Moreover, if the Government possesses information which may lead to discovery of prior inconsistent statements or other evidence helpful to Defendant, fundamental fairness dictates that such information be provided. United States v.

Brash, 365 F.2d 395, 400-401 (2d Cir. 1966).

With respect to each Government witness, Defendant seeks production of all personnel files and other Government files concerning such potential witnesses. Defendant seeks this information to ascertain whether any information exists in such files that would provide a basis for impeachment of such files that would provide a basis for impeachment of such witnesses. Disclosure of this category of information is mandated by United States v. Deutsch, 475 F.2d 55, 58 (5th Cir. 1973); United States v. Morrell, 524 F.2d 550, 552-55 (2d Cir. 1975). See also Monroe v. Blackburn, 607 F.2d 148, 152 (5th Cir. 1979). Indeed, with respect to that portion of the requested information that concerns informers, accomplices or co-conspirators, the courts have permitted defendants wide latitude in investigation and cross-examination of such inherently suspect witnesses. See United States v. Joseph, 533 F.2d 282, 286-87 (5th Cir. 1976). Without pre-trial access to such information, Defendant may well be denied due process of law as well as the effective assistance of defense counsel.

The same capability to assess all prior testimony of expert witnesses is also essential to insure that Defendant is able to effectively exercise their constitutional right to confront and cross-examine witnesses and to fully utilize the effective advice of counsel in that regard. See McConnell v. United States, 393 F.2d 404 (5th Cir. 1958) (Defendants entitled to impeach handwriting expert by showing mistaken identification at another related trial).

To facilitate disclosure pursuant to this request, Defendant requests that the Court instruct the Government to examine and identify all appropriate Government files so that Defendant will be provided the opportunity to file additional motions, if necessary.

With respect to Defendant's request concerning disclosure of any identification of any defendant made by any potential Government witness or failure to make such an identification, such

11

material clearly falls within the purview of <u>Brady</u>. See <u>Cannon v. Alabama</u>, 558 F.2d 1211, 1215 (5th Cir. 1977), <u>cert. denied</u>, 434 U.S. 1087 (1978).

Defendant also seeks disclosure of all documents and information with the above-enumerated categories with respect to each non-witness declarant whose statement the Government intends to offer in evidence at trial. Rule 806 of the Federal Rules of Evidence permits impeachment of a non-witness' declaration and disclosure of the requested information is necessary to prepare such impeachment evidence.

Defendant requests that the Court order the Government to search for and disclose all documents and information responsive to the specific requests contained in Defendant's motion, or alternatively, order all such information to be produced before the Court **in camera**. See <u>United States v. Morris</u>, 532 F.2d 436, 445 (5th Cir. 1976). This Court should not rely solely upon the Government's good faith in responding to this request, but rather should insure that Defendant's constitutional rights safeguarded by review of all information that may in any way be favorable to any defendant or provide the basis for impeachment of potential Government witnesses.

## IV. DISCOVERY RE: NON-GOVERNMENT WITNESSES

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure requires the Government to disclose and to permit the Defendant to inspect and copy all documents or other tangible objects which are within its possession, custody, or control and which (a) are material to the preparation of a defense, or (b) are intended for use by the Government as evidence in chief at the trial, or (c) were obtained from or belong to the Defendant. Unlike its predecessor, former Rule (16)(b), this subsection of amended Rule 16 makes disclosure mandatory rather than discretionary. Further, the Defendant is no longer required to make a "showing" that their discovery request is "material" or "reasonable". Indeed, the word reasonable has been entirely deleted from the amended rule. In

12

addition, of course, due process itself requires the prosecution to respond to specific requests for any evidence or information which arguably is favorable or helpful to the accused. <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976). Finally, in this federal prosecution the Court's supervisory power to safeguard "the correct administration of justice in the federal courts" reinforces the due process requirement of disclosure. E.g. <u>United States v. Consolidated Laundries Corp.</u>, 291 F.2d 563, 571 (2d Cir. 1961); <u>United States v. Miller</u>, 411 F.2d 825, 832 (2d Cir. 1969). See, generally, <u>Communist Party of the United States v. S.A.C.B.</u>, 351 U.S. 115, 124 (1956).

Pursuant to both Rule 16(a)(1)(C) and the needs of due process, Defendant seeks to discover all statements relevant to the charges contained in the Indictment made by persons whom the Government does not presently intend to call as witnesses in this case. Under Rule 16(a)(2), discovery of statements made by Government witnesses is governed by the Jencks Act (18 U.S.C. section 3500). However, neither the Jencks Act nor Rule 16(a)(2) preclude discovery of witness statements made by witnesses whom the Government does not intend to use at trial. Therefore, disclosure of material statements in this category can be ordered under Rule 16(a)(1)(C). 8 Moore, <u>Federal Practice</u>, 16.05(4) at 16079 (2d Ed. 1977). See <u>United States v. Leichtfuss</u>, 331 F.Supp. 723, 735 (N.D.Ill. 1971); <u>United States v. Ladd</u>, 48 F.R.D. 266 (D.Alaska 1969); <u>United States v. Perkins</u>, 383 F.Supp 922, 930 (N.D.Ohio 1974); <u>United States v. Narcisco</u>, 446 F.Supp. 252, 267-68 and n.14, 271 (E.D.Mich. 1977); <u>United States v. Kearney</u>, 436 F.Supp. 1108, 1112 (S.D.N.Y. 1977); <u>United States v. Marshak</u>, 364 F.Supp. 1005, 1007-8 (S.D.N.Y. 1973) (decided prior to the 1975 liberalizing amendments to Rule 16 which eliminated the requirement that the defendant make a "showing" of materiality and reasonableness); <u>Rezneck, The New Rules of Criminal Procedure</u>, 54 Geo. L.J. 1276, 1286 (1966); see <u>United States v. Houston</u>, 339 F.Supp. 762m 766 (N.D.Ga. 1972) (persons known to the Government who have information about the facts of the case but whom the

13

prosecution will not call as witnesses at trial "might" have favorable evidence for Defendant and the disclosure of their identity would have a material bearing on Defendant's preparation for trial (request for names and addresses of such non-witnesses granted)); cf. Lenske v. United States, 383 F.2d 20, 22-23 (9th Cir. 1967).

In the present case, Defendant requests production of non-witnesses' statements "directly or indirectly relating to or connected with the facts of this case". Hence, the statements are, by definition, "material to the preparation of the defense under Rule 16(a)(1)(C). See, generally, 1 Wright, Federal Procedure and Practice, 254 at 511-514 (1969) (discussing Rule 16(b) as worded prior to the 1975 liberalizing amendments). Moreover, the accused has a special need for them in the present case where the crimes are large, ill-defined conspiracies and where the statements may even be exculpatory, since they were made by individuals who the Government does not intend to call as witnesses at trial.

Indeed, the vagueness of the Indictment in this case has made it nearly impossible for Defendant to understand the exact nature of the alleged prescribed conduct. The Indictment does no more than attack the statute. What the Defendant is alleged to have done is left to speculation and surmise. Accordingly, the bare bones Indictment fails to provide, even minimally, that which any defendant needs in order to prepare for trial.

In conclusion, the Government has had the advantage of a federal grand jury, with its power of subpoena. It has, in the words of Dennis v. United States, 384 U.S. 855, 873 (1966), accumulated a "storehouse of relevant facts".

The specific statements sought by this motion are not protected from disclosure by the Jencks Act nor by any necessity to conceal the identity of prospective witnesses. Rather, these statements are directly discoverable under Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure.

14

Therefore, they should be routinely disclosed so that Defendant will have access to the Government's "storehouse of relevant facts" in preparation of their defense to the serious charges contained in the Indictment of this case. Due process requires no less.

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to the following parties listed below, this _____ day of December, 2000.

> HADDAD & HESTER, P.A.
> One Financial Plaza, Suite 2612
> Fort Lauderdale, Florida 33394
> [954] 467-6767
>
> By: _____
>      FRED HADDAD
>      Florida Bar No. 180891

## SERVICE LIST

Larry Bardfeld, Esq.
Office of the U.S. Attorney
500 E. Broward Blvd., 7th Floor
Fort Lauderdale, Florida 33394-3092

Timothy Basiello, Esq.
33 N. Dearborn Street
Chicago, IL 60602

Leonard Penn, Esq.
DeFabio and Penn, P.A.
2121 Ponce de Leon Blvd, Suite 430
Coral Gables, Florida 33134

Glenn Seiden, Esq.
33 N. Dearborn Street, Suite 1015
Chicago, IL 60602

Richard Hamar, Esq.
2437 Briarcrest Road
Beverly Hills, CA 90210

Mark NeJame, Esq.
1 South Orange Avenue, Suite 304
Orlando, Florida 32801

John R. Howes, Esq.
633 S.E. 3rd Avenue. Suite 4F
Fort Lauderdale, Florida 33301

Theodore Weeks, Esq.
1 Lake Morton Drive
P.O. Box 3
Lakeland, Florida 33802