UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6211-CR-HURLEY/VITUNAC

UNITED STATES OF AMERICA

       Plaintiff,

vs.

THOMAS L. NAROG, et al.,

       Defendants.
_____/



## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T.K. Hurley for disposition of and/or report and recommendation with respect to all pretrial criminal motions.

Before the Court is Defendant, NAROG's, initial Motion to Suppress (DE 231) and Supplemental Motion to Suppress Statements (DE 233). This Court has reviewed the Government's response to Defendant's Motion to Suppress, and this Court conducted an evidentiary hearing with respect to the issues raised by the Defendant on March 1, 2001. This matter is now ripe for review.

### Defendant's Written Motion

In Defendant's Written Motion to Suppress he alleges that the Government asserts that the Defendant made certain post arrest statements. "Defendant claims that some are exculpatory but claimed to be untrue and others are allegedly inculpatory." Defendant claims that if he was advised of his <u>Miranda</u> rights that he did not fully understand those rights or recognize the significance thereof to the degree that an effective waiver would

occur. In Defendant's Supplemental Motion to Suppress Statements he alleges that immediately upon being advised of his <u>Miranda</u> rights he requested the presence of his attorney, Richard Capalbo and demanded to speak with him before any questioning. Defendant alleges that he advised the agents of those facts but the agents questioned him for several hours before allowing him to contact his attorney.

### Government's Written Response

THOMAS NAROG was arrested by DEA agents on July 29, 2000. After his arrest DEA group supervisor, Steve Randerson, read NAROG his rights per <u>Miranda</u>. The Government attaches a copy of the form from which the agents read NAROG his <u>Miranda</u> rights. NAROG told agents that he understood his rights and that he wished to speak with the agents concerning the reasons for his arrest. NAROG also told the agents that he wanted to have his attorney, Richard Capalbo, present during any questioning. Agents then called Richard Capalbo who responded to the DEA office. NAROG then answered some of agents questions in the presence of his lawyer after having been advised of his rights.

The Government contends that the Defendant is an astute business man who understood his rights per <u>Miranda</u>, availed himself of a lawyer and freely and voluntarily made statements after the advised of counsel.

### The Evidentiary Hearing

Steven Randerson is a supervisory agent with the Drug Enforcement Administration and testifies at the evidentiary hearing. He has been a group supervisor for the past year. Also testifying at the Motion to Suppress was Special Agent Mike Baker. Mike Baker has been a Drug Enforcement Administration agent since August of 1990. THOMAS NAROG,

the Defendant, testified at the evidentiary hearing. According to the Government pleadings NAROG is a 68 year old business man. Supervisory Drug Enforcement Agent, Steven Randerson testified that on July 29, 2000, at approximately 7:15 a.m., he knocked on the residence's door of Defendant, NAROG. NAROG came to the door and the agents identified themselves and told NAROG that he was under arrest for distribution of pseudoephedrine. Randerson read NAROG his Miranda rights from a DEA Form 13. (Defendant stipulates that his rights were read to him.) According to Randerson, NAROG made no statements after his rights were read to him. The agents did not attempt to question NAROG other than to ask him if he wished to cooperate to which he responded, "yes". Randerson testified that the agents allowed NAROG to get his clothes. However, the agents did not question NAROG at his home because they had 10 other defendants to arrest that morning and because they did not have a search warrant for NAROG's house.

NAROG was transported in handcuffs to the DEA office. According to Randerson, NAROG was not questioned on his way to the office. At the office NAROG was photographed and fingerprinted, and agents began processing NAROG's DEA Form 202 (biographical information). NAROG indicated to the agents that he wanted to talk to them in the presence of his attorney. Randerson testified that he told NAROG to call his attorney. NAROG did so and approximately an hour to an hour and a half later the attorney representing NAROG (Capalbo) arrived at headquarters. Randerson further stated that while waiting for Capalbo to arrive no one questioned the Defendant. Once Capalbo arrived, Special Agent Baker asked NAROG to clarify certain answers he had made in a non custodial interview on July 13th. NAROG had been interviewed at his

warehouse by DEA and had apparently given false answers to them at that time.

Special Agent Mike Baker testified. He has been an agent for the past 11 years with the DEA. He was involved in the arrest of NAROG. Baker witnessed Randerson advise NAROG of his Miranda rights. Baker also testified that NAROG did not make any statements at his house prior to leaving other than to agree to talk to the agents once he had the presence of his attorney. Baker stated that approximately 8:00 a.m., at the DEA office, NAROG called Capalbo and asked Capalbo to come to the DEA office. According to Baker this was a Saturday, and it took approximately an hour for Capalbo to arrive. In the interim, NAROG was fingerprinted, photographed and processed. Once Capalbo arrived the agents and lawyer went to the main conference room at DEA and questioning began.

THOMAS NAROG testified. NAROG admits being advised of his rights by the agents. He also admits that he did not ask for a lawyer at his house. NAROG says he was questioned by the agents while he was being driven to the jail. He states that he was questioned by agents before his lawyer arrived. According to NAROG, agents came to the holding cell where he was being kept prior to the arrival of his lawyer, and they attempted to question him. NAROG, however, could not remember the specifics of anything that he told the agents prior to the arrival of his lawyer. NAROG could not identify with any specificity what allegedly was said before his lawyer arrived.

Discussion

The issue before this Court is factual. This Court finds from the testimony before the Court that Special Agent Randerson advised the Defendant of his rights per Miranda.

This Court finds that the Defendant invoked his right to counsel prior to any questioning by the agents and that invocation was honored by the agents. The agents directed NAROG to call his lawyer and his lawyer in fact responded to DEA headquarters. NAROG was questioned by the agents in the presence of his lawyer and with the lawyer's presumed consent. There are no grounds to support a motion to suppress.

Recommendation

This Court recommends to the District Court that Defendant's Motion to Suppress Statements be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T.K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir.1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this ___15___ day of March, 2001.

/s/ Ann E. Vitunac
ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA - Laurence Bardfeld
Fred Haddad, Esq.