UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6211-CR-HURLEY/VITUNAC



UNITED STATES OF AMERICA

    Plaintiff,

vs.

THOMAS L. NAROG, et al.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T. K. Hurley for disposition of and/or report and recommendation with respect to all pretrial criminal motions.

Before the Court is Defendant, NAROG's Motion to Quash Search Warrants and Suppress Evidence and Statements that Resulted (DE 261) ("Motion to Suppress"). This Court has reviewed the Motion to Suppress Search Warrants and the Government's response (DE 276) filed thereto. This Court conducted oral argument on the Motion to Suppress and conducted a Leon Hearing with respect to the Officer's good faith execution of the Warrants which are the subject of this Motion to Suppress. These matters are now ripe for review.

#### Defendant's Written Motion

NAROG moves to suppress Search Warrants 00-4730-BSS, 00-4731-BSS, and 004732-BSS. Without objection at the hearing on the Motion to Suppress, the Defendant added case 00-4729-BSS to the list of Warrants which he seeks to suppress. The Affidavits are in material respects the same

as the issue of probable cause. For expediency, this Court will quote from 00-4730-BSS, the Search Warrant Affidavit from NAROG's home.

Defendant seeks to suppress these Warrants and all fruits seized as a result thereof claiming that they fail to state probable cause for the search of the Defendant's residence or the subsequent search of the electronics seized therein. The Defendant adopts this same argument with respect to Search Warrant 00-4729-BSS, which involves Defendant's storage facility.

Defendant argues that a fair reading of the Affidavits fails to establish probable cause for the searches. Defendant argues that the Affidavits are replete with conclusions and suspicions without any basis for "this intelligence." Defendant points out that the pseudoephedrine alleged to have been possessed by the Defendant is noncontraband. Defendant also points out that he is a licensed DEA registered pharmaceutical company. Defendant argues that there are no facts contained within the Warrant which would lead one to believe that the Defendant was knowingly involved in shipping pseudoephedrine to companies which were then involved in illegally making methamphetamine.

## Government's Written Response

The Government contends that Defendant's Motion to Quash and/or Suppress should be denied because a Magistrate Judge issued the Warrants based on a common sense decision that probable cause to search existed.

The Government urges the Court not to read the Affidavits in support of the Search Warrant in a hypertechnical manner and to afford Magistrate Judges a high level of deference in their determination of probable cause in signing Search Warrants.

The Government asserts that the facts contained in the Affidavits underlying the various searches involving NAROG, contained probable cause to believe that NAROG's house and

computers would contain files, reports, disks and other materials relating to the business of Seaside Pharmaceuticals which was linked in the Affidavits to the production of methamphetamine by clandestine labs.

## Discussion

On March 1, 2001, this Court held a hearing on Defendant's Motion to Suppress Search Warrants. This Court further conducted a <u>Leon Hearing</u> on April 3, 2001, opining that probable cause did not exist for the issuance of the Search Warrants because no underlying Affidavit shows guilty knowledge on NAROG's part in connection with the production of methamphetamine. The Affidavit in Support of Search Warrant 00-4730-BSS, states that the Affiant, DEA Special Agent Joseph Collins, is a special agent who has received extensive training in narcotics through DEA. The Affidavit contains language that Special Agent Collins has expertise and experience concerning people involved with diversion and distribution of listed chemicals used to manufacture controlled substances. Special Agent Collins states that those persons often keep ledger books, receipts, bills of lading, address books, computers, etc., to facilitate communications and that seizure of these items "can result in evidence that can help trace the activities, memberships, and location of additional individuals involved in the diversion and distribution of listed chemicals used to manufacture controlled substances."

Paragraph 3 of Special Agent Collins's Affidavit says there is probable cause to believe that the residence of NAROG contains evidence of the commission of possession and distribution of a listed chemical, <u>having probable cause to believe that the listed chemical will be used to manufacture a controlled substance</u> and conspiracy to commit those offenses.

Under the heading, <u>Location of Search Warrant</u>, and after a description of NAROG's home,

Special Agent Collins asserts that, "[t]hrough observations and documentation obtained during this investigation, it has been determined that THOMAS NAROG is responsible for the exportation, diversion and distribution of a listed chemical, knowing or having reason to believe, that the listed chemical will be used to manufacture a controlled substance. This listed chemical is pharmaceutical grade pseudoephedrine. Pseudoephedrine is the primary chemical needed to produce methamphetamine, a Schedule II controlled substance. NAROG is also responsible for the collection and distribution of the proceeds from this sale, exportation, diversion and distribution of a listed chemical needed to produce a controlled substance. This investigation has revealed numerous payments to various individuals and businesses associated with this organization."

Special Agent Collins's Affidavit then says that from at least March 22, 2000, NAROG has been involved in the sale, exportation, diversion and distribution of a listed chemical knowing that the listed chemical will be used to manufacture a controlled substance. The Affidavit further reflects that NAROG is the owner of Seaside Pharmaceuticals and is registered with DEA as a List I Chemical Distributor for pseudoephedrine, phenylpropanolamine, and ephedrine. According to the Affidavit, this registration allows NAROG/Seaside Pharmaceuticals to engage in business transactions involving List I chemicals only with other DEA registered companies or corporations. The registrant has federal record keeping requirements with respect to these chemicals.

Paragraph 8 of the Affidavit alleges that between September 1999 and July 2000, NAROG purchased approximately eighteen (18) gross tons of pseudoephedrine from manufacturers in the United States. "Intelligence from DEA California revealed that numerous methamphetamine investigations in California resulted in the recovery of thousands of bottles of "Tru-Choice Maximum" brand pseudoephedrine at various clandestine chemical dump sites. The bottles were

4

also labeled Distributed by: SEASIDE PHARMACEUTICALS, Fort Lauderdale, FL 33311."

Paragraph 9 of the Affidavit says, "[s]ince the initiation of the investigation in March 2000, intelligence has revealed that Seaside Pharmaceuticals has diverted in excess of approximately five (5) tons of pseudoephedrine destined for methamphetamine organizations throughout the continental United States."

Paragraph 10 of the Affidavit says, "[b]eginning March 20, 2000, DEA Fort Lauderdale, in conjunction with other DEA offices throughout the United States, initiated four successful controlled deliveries of pseudoephedrine from NAROG to the methamphetamine manufacturers in California." These deliveries resulted in the arrests of 24 individuals, and the seizure of 42 pounds of methamphetamine at a clandestine ephedrine extraction lab. Further, the Affidavit details two additional controlled deliveries between NAROG and "various middle eastern traffickers in central Florida and Oregon resulting in the seizure of approximately two and a half million dosage units of pseudoephedrine."

At the hearing on the Motion to Suppress, the Government conceded that there is no factual evidence in the Affidavits supporting the Search Warrants that NAROG knew that pseudoephedrine he controlled was being used or would be used to make illegal methamphetamine. The Affidavits assert that NAROG "diverted" pseudoephedrine but neither the Affidavits nor any federal statute defines the word "divert" as encompassing an illegal act. NAROG is a licensed and regulated pharmaceutical distributor. By his registration NAROG is permitted to possess and deal in pseudoephedrine with other DEA registered companies and corporations. Though the Affidavit alleges that NAROG's pseudoephedrine bottles ended up in a California dump, there is no allegation in the Affidavits that NAROG either knowingly or unknowingly delivered those pseudoephedrine

to anyone in California or elsewhere.

The Affidavits assert that Seaside Pharmaceuticals has diverted over eighteen (18) gross tons of pseudoephedrine. However, the Affidavits do not tell the Court whether that amount of pseudoephedrine is inconsistent with the business of Seaside Pharmaceuticals which business is permitted to have pseudoephedrine. There is no assertion or conclusion by the Agent in the Affidavits that eighteen (18) gross tons is an extraordinary amount of pseudoephedrine for a legitimate pharmaceutical company. There is no statement within the Affidavits by the Agent concluding that NAROG knowingly did anything illegal. The statement, "THOMAS NAROG is responsible for the exportation, diversion and distribution of a listed chemical knowing or having reasonable cause to believe that the listed chemical will be used to manufacture a controlled substance" does not lead one to the conclusion that NAROG's actions are illegal because NAROG can lawfully deal in pseudoephedrine as a pharmaceutical company. Presumably, pseudoephedrine is used to make other controlled substances which are legal, i.e., methamphetamine. Methamphetamines have valid medical uses and are illegal only when not used or distributed in accordance with the law. The Affidavits do not delineate between NAROG/Seaside Pharmaceuticals's lawful business in pseudoephedrine as opposed to detailing facts indicating an unlawful use of pseudoephedrine to make methamphetamine.

The summary of the probable cause Affidavit states, "[t]he information set forth in this Affidavit details how the NAROG-JABER organization has been involved in organized narcotics and money laundering related criminal activity." There are no facts in the Affidavit at all concerning money laundering. It appears that Judge Seltzer struck language that finds probable cause to believe NAROG was involved with money laundering. (See Affidavit at page 2.)

6

Federal Rules of Criminal Procedure, Rule 41(b), titled, Property or Persons Which May Be Seized With a Warrant, states:

> A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense; or (4) person for whose arrest there is probable cause, or who is unlawfully restrained.

Fed. R. Crim. P. 41(b).

Paragraph 3 of the Affidavit states, ". . . there is probable cause to believe that this location (NAROG's home) contains evidence of the commission of the following crimes: possession and distribution of a listed chemical, having probable cause to believe, that the listed chemical will be used to manufacture a controlled substance and conspiracy to commit these offenses . . ." As previously stated and conceded by the Government, there are no facts in the Affidavits to support a statement that NAROG or anyone else for that matter, knowingly possessed listed chemicals having probable cause to believe that the listed chemical would be used to manufacture a controlled substance in violation of federal law. Thus, the Warrant must fail for lack of probable cause unless it is saved by the "good faith exception" found in United States v. Leon, 468 U.S. 897 (1984).

Special Agent Joseph Collins testified at the Leon Hearing. Collins testified that the NAROG Search Warrants were part of a nationwide investigation of methamphetamine dealers. According to Special Agent Collins, federal investigators from Colorado, Florida, and California were involved in a joint investigation of methamphetamine dealers including NAROG. All of these investigations were to culminate in the arrests of these drug dealers on August 3, 2000. This effort was to be coordinated among the DEA offices across the United States. The arrests were to be made

after presentations of the various cases to grand juries throughout the United States on August 1, 2000. One week before the final presentations of the cases to those grand juries, investigators began their presentation of those investigations to those grand juries. On July 28, 2000, the entire investigation was compromised when a federal grand juror in Colorado tried to extort a lead defendant in the investigation. An emergency decision by DEA was made at that time to begin arresting all of the suspects on criminal complaints instead of indictments because those criminal complaints could be secured in a short amount of time. Investigators were afraid that the entire case would be compromised. Fort Lauderdale was told to make its arrest on probable cause and to secure a criminal complaint after the arrest of NAROG.

Special Agent Collins testified that he had to come back to his office on Friday night before the arrest of NAROG to coordinate arrests in Palm Beach, Dade and Broward Counties. It was DEA's hope to arrest between seven (7) and eight (8) people in the Southern District of Florida. Special Agent Collins made operations plans and the decision was made to make arrests at 7:00 a.m., on Saturday. Special Agent Collins went to Dade County at 4:00 a.m., to coordinate officers there. Agent Mike Baker was responsible for the arrest of NAROG. By 7:30 a.m., on Saturday, all Defendants in the Southern District of Florida had been arrested. Thereafter, Special Agent Collins went to Assistant United States Attorney Laurence Bardfeld's office in Fort Lauderdale to draft a criminal complaint and search warrants NAROG's home and Shurgard Storage. Special Agent Collins testified that at the time he drafted the search warrants and criminal complaint that he had not slept since the Thursday night before.

Special Agent Collins and AUSA Bardfeld met Judge Seltzer at his chambers at 5:00 p.m. on Saturday. Judge Seltzer thoroughly read all of the Warrants and hand-penned corrections on the

Affidavits as he saw fit.

Special Agent Collins testified that he in good faith believed that there was probable cause to secure a search warrant and that Judge Seltzer had carefully read Special Agent Collins's Affidavits and had found probable cause to issue the Search Warrants in question.

There is no evidence before this Court that Special Agent Collins's Affidavits contained knowing or reckless falsehoods. There is no evidence before this Court that Special Agent Collins's Affidavit contained any falsehoods. The evidence before this Court is that the Affidavits and Warrants were reviewed and issued by a neutral and detached Magistrate Judge. The evidence before this Court is that the Warrants in question are facially valid. Defendant contends that the Warrant was so lacking an indicia of probable cause as to render official belief in its existence entirely unreasonable. This Court disagrees. The Affidavits filed by Special Agent Collins are not bare bones Affidavits. They contain numerous allegations of fact regarding pseudoephedrine, i.e., that NAROG/Seaside Pharmaceuticals got eighteen (18) gross tons of pseudoephedrine. Special Agent Collins assumed that the amount of drugs in and of itself would trigger probable cause with respect to illegal conduct. Special Agent Collins asserts in the Affidavits that drugs were diverted to makers of methamphetamine. The Government argues that these terms have meaning to DEA agents, however, that meaning was not defined for the Court in the Warrant. It cannot be said that a reasonably well trained law enforcement officer would have known that this Search Warrant lacked probable cause. The Government does not concede lack of probable cause in the Warrant, but asserts that in any event the good faith exception of Leon applies because the agent acted in good faith when obtaining the Warrant and that the Warrant was not so lacking in probable cause that the exception does not apply. See United States v. Travers, 233 F. 3d 1327 (11th Cir. 2000).

This Court agrees with the Government and finds that if this Warrant does in fact lack probable cause, which this Court has found, the evidence is admissible based on the good faith exception of Leon.

Because of these findings of fact and reasoning, this Court recommends to the District Court that the Defendant's Motion to Suppress Search Warrants 00-4729-BSS, 00-4730-BSS, 00-4731-BSS, and 004732-BSS, be DENIED. Defendant's Motion to Suppress Statements falls with this finding. The Motion to Suppress Statements assumes a finding of illegality of the searches.

### Recommendation

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir.1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this __1__ day of April, 2001.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA - Laurence Bardfeld (FTL)
Fred Haddad, Esq.