UNITED STATES DRISTICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6211-CR-HURLEY (s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THOMAS NAROG,

    Defendant.
_____/

## PETITION BY THIRD PARTY, SUNTRUST BANK

Third Party, SUNTRUST BANK, by and through its undersigned attorney, pursuant to the Preliminary Order of Forfeiture, dated April 19, 2002, and the "Order Partially Setting Aside the Order of Forfeiture," dated October 3, 2002, files the following Petition as to its interest in the forfeited residence, as follows:

1. Third Party, SUNTRUST BANK, is mortgagee of the property located 8 Castle Harbor Isle, Fort Lauderdale, Florida. Attached hereto is a "Home Equity Line Mortgage," recorded at OR Book 30367, Page 1469, Public Records of Broward County, Florida.

2. The pay off on the mortgage as of October 4, 2002, is $37,805.85. The per diem is $5.91000.

WHEREFORE, Third Party, SUNTRUST BANK, petitions the Court to require the Government to pay off the mortgage.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing has been furnished by regular U.S. mail to: United States Attorney, c/o William H. Beckerleg, Jr., Assistant U.S. Attorney, 500 East Broward Boulevard, Ft. Lauderdale, Florida, 33394, this 30th day of October, 2002.

E. GIVENS GOODSPEED, of
Rush, Marshall, Jones and Kelly, P.A.
109 East Church Street, Fifth Floor
P.O. Box 3146
Orlando, FL 32802-3146
(407) 425-5500
Attorneys for Third Party, SunTrust Bank
Florida Bar No: 321559

000605513950

INSTR # 100173109
OR BK 30367 PG 1469
RECORDED 03/28/2000 09:33 AM
COMMISSION
BROWARD COUNTY
DOC STMP-M    245.00
INT TAX       140.00
DEPUTY CLERK 1034

W/C TRI-COUNTY for: --

Suntrust Bank South Florida N.A.
1501 N.E. 26th St.
Wilton Manors, Fl 33305

# HOME EQUITY LINE MORTGAGE

| BORROWER | MORTGAGOR |
|---|---|
| THOMAS NAROG | THOMAS L NAROG, THE SURVIVING SPOUSE OF ANNETTE NAROG, DECEASED. |
| **ADDRESS** | **ADDRESS** |
| 8 CASTLE HARBOR ISLE<br>FT LAUDERDALE, FL 33308 | 8 CASTLE HARBOR ISLE<br>FT LAUDERDALE, FL 33308 |
| TELEPHONE NO.         IDENTIFICATION NO.<br>(954) 561-1207      233520399 | TELEPHONE NO.         IDENTIFICATION NO.<br>(954) 561-1207      233520399 |

In consideration of the loan or other credit accommodation hereinafter specified and any future advances or future Obligations, as defined herein, which may hereafter be advanced or incurred and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor hereby mortgages, grants, assigns, and conveys to SunTrust Bank , 1501 NE 26th Street, Fort Lauderdale, FL 33305
("Lender"), its successors and assigns, the real property described in Schedule A which is attached to this Mortgage and incorporated herein together with all future and present improvements and fixtures; all privileges, hereditaments, and appurtenances; all leases, licenses and other agreements; all rents, issues and profits; all water, well, ditch, reservoir and mineral rights and stock, and standing timber and crops pertaining to the real property (collectively, "Property") until payment in full of all Obligations secured hereby.

Moreover, in further consideration, Mortgagor does, for Mortgagor and Mortgagor's heirs, representatives, successors, and assigns, hereby expressly warrant, covenant, and agree with Lender, its successors and assigns as follows:

1. **OBLIGATIONS.** This Mortgage shall secure the payment and performance of all presently existing or future evidences of indebtedness, liabilities, obligations and covenants of Borrower or Mortgagor (collectively, "Obligations") to Lender pursuant to:
   (a) this Mortgage and the following promissory notes and other agreements:

| INTEREST RATE | PRINCIPAL AMOUNT / CREDIT LIMIT | FUNDING / AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $70,000.00 | 03/13/00 | N/A | | |

[X] all other presently existing or future evidences of indebtedness, liabilities, obligations, agreements, instruments, guaranties, or otherwise of Borrower or Mortgagor to Lender (whether executed for the same or different purposes than the foregoing); however, if securing such other indebtedness with the Property violates any state or federal law, rule, or regulation, including, but not limited to, failure to provide any right of rescission when required, Lender waives the security interest in the Property to the extent it causes any such violation;
   (b) all amendments, extensions, renewals, modifications, replacements or substitutions to any of the foregoing.

As used in this Paragraph 1, the terms Mortgagor and Borrower shall include and also mean any Mortgagor or Borrower if more than one.

2. **FUTURE ADVANCES.** This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Lender or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any time the maximum principal amount of $140,000.00 _____, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the mortgaged Property with interest on such disbursements. Any such future advances, whether such obligatory or to be made at the option of Lender or otherwise, may be made either prior to or after the due dates of the promissory notes or any other agreements secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness by the Borrower and Mortgagor to Lender (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all further advances made by Lender to Borrower or Mortgagor under this future advance clause.

3. **REPRESENTATIONS, WARRANTIES AND COVENANTS.** Mortgagor represents, warrants and covenants to Lender that:
   (a) Mortgagor has fee simple marketable title to the Property and shall maintain the Property free of all liens, security interests, encumbrances and claims except for this Mortgage and those described in Schedule B which is attached to this Mortgage and incorporated herein by reference, which Mortgagor agrees to pay and perform in a timely manner;
   (b) Mortgagor is in compliance in all respects with all applicable federal, state and local laws and regulations, including, without limitation, those relating to "Hazardous Materials" as defined herein, and other environmental matters (the "Environmental Laws"), and neither the federal government nor the state where the Property is located nor any other governmental or quasi governmental entity has filed a lien on the Property, nor are there any governmental, judicial or administrative actions with respect to environmental matters pending, or to the best of the Mortgagor's knowledge, threatened, which involve the Property. Neither Mortgagor nor, to the best of Mortgagor's knowledge, any other party has used, generated, released, discharged, stored, or disposed of any Hazardous Materials as defined herein, in connection with the Property or transported any Hazardous Materials to or from the Property. Mortgagor shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to: (i) petroleum; (ii) friable or nonfriable asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute; and (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute or any other similar state or federal statute, rule, regulation or ordinance now or hereafter in effect. Mortgagor shall not lease or permit the sublease of the Property to a tenant or subtenant whose operations may result in contamination of the Property with Hazardous Materials or toxic substances;
   (c) All applicable laws and regulations including, without limitation, the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq. (and all regulations promulgated thereunder) and all zoning and building laws and regulations relating to the Property by virtue of any federal, state or municipal authority with jurisdiction over the Property, presently are and shall be observed and complied with in all material respects, and all rights, licenses, permits, and certificates of occupancy (including but not limited to zoning variances, special exceptions for nonconforming uses, and final inspection approvals), whether temporary or permanent, which are material to the use and occupancy of the Property, presently are and shall be obtained, preserved and, where necessary, renewed;

5W625312 442000047

OR BK 30367 PG 1470

(d) Mortgagor has the right and is duly authorized to execute and perform its Obligations under this Mortgage and these actions do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may be binding on Mortgagor at any time;

(e) No action or proceeding is or shall be pending or threatened which might materially affect the Property; and

(f) Mortgagor has not violated and shall not violate any statute, regulation, ordinance, rule of law, contract or other agreement which might materially affect the Property (including, but not limited to, those governing Hazardous Materials) or Lender's rights or interest in the Property, pursuant to this Mortgage.

**4. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN MORTGAGORS OR BORROWERS.** In the event of a sale, conveyance, lease, contract for deed or transfer to any person of all or any part of the real property described in Schedule A, or any interest therein, or of all or any beneficial interest in Borrower or Mortgagor (if Borrower or Mortgagor is not a natural person or persons but is a corporation, limited liability company, partnership, trust, or other legal entity), Lender may, at its option, declare the outstanding principal balance of the Obligations plus accrued interest thereon immediately due and payable. At Lender's request, Mortgagor or Borrower, as the case may be, shall furnish a complete statement setting forth all of its stockholders, members or partners, as appropriate, and the extent of their respective ownership interests.

**5. ASSIGNMENT OF RENTS.** In consideration of the Obligations which are secured by this Mortgage, Mortgagor absolutely assigns to Lender all Mortgagor's estate, right, title, interest, claim and demand now owned or hereafter acquired in all existing and future leases of the Property (including extensions, renewals and subleases), all agreements for use and occupancy of the Property (all such leases and agreements whether written or oral, are hereafter referred to as the "Leases"), and all guaranties of lessees' performance under the Leases, together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other income of any nature now or hereafter due (including any income of any nature coming due during any redemption period) under the Leases or from or arising out of the Property, including minimum rents, additional rents, percentage rents, parking or common area maintenance contributions, tax and insurance contributions, deficiency rents, liquidated damages following default in any Lease, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Property, all proceeds payable as a result of a lessee's exercise of an option to purchase the Property, all proceeds derived from the termination or rejection of any Lease in a bankruptcy or other insolvency proceeding, and all proceeds from any rights and claims of any kind which Mortgagor may have against any lessee under the Leases or any occupants of the Property (all of the above are hereafter collectively referred to as the "Rents"). This assignment is subject to the right, power and authority given to the Lender to collect and apply the Rents. This assignment is recorded in accordance with applicable state law; the lien created by this assignment is intended to be specific, perfected, and choate upon the recording of this Mortgage, all as provided by applicable state law as amended from time to time. As long as there is no default under the Obligations or this Mortgage, Lender grants Mortgagor a revocable license to collect all Rents from the Leases when due and to use such proceeds in Mortgagor's business operations. However, Lender may at any time require Mortgagor to deposit all Rents into an account maintained by Mortgagor or Lender at Lender's institution. Upon default in the payment of, or in the performance of, any of the Obligations, Lender may proceed to collect and receive all Rents, from the Property, and Lender shall have full power to periodically make alterations, renovations, repairs or replacements to the Property as Lender may deem proper. Lender may apply all Rents in Lender's sole discretion, to payment of the Obligation or to the payment of the cost of such alterations, renovations, repairs and replacements and any expenses incident to taking and retaining possession of the Property and the management and operation of the Property. Lender may keep the Property properly insured and may discharge any taxes, charges, claims, assessments and other liens which may accrue. The expense and cost of these actions may be paid from the Rents received, and any unpaid amounts shall be added to the principal of the Obligations. These amounts, together with other costs, shall become part of the Obligations secured by this Mortgage.

**6. LEASES AND OTHER AGREEMENTS.** Mortgagor shall not take or fail to take any action which may cause or permit the termination or the withholding of any payment in connection with any Lease pertaining to the Property. In addition, Mortgagor, without Lender's prior written consent, shall not: (a) collect any monies payable under any Lease more than one month in advance; (b) modify any Lease; (c) assign or allow a lien, security interest or other encumbrance to be placed upon Mortgagor's rights, title and interest in and to any Lease or the amounts payable thereunder; or (d) terminate or cancel any Lease except for the nonpayment of any sum or other material breach by the other party thereto. If Mortgagor receives at any time any written communication asserting a default by Mortgagor under an Lease or purporting to terminate or cancel any Lease, Mortgagor shall promptly forward a copy of such communication (and any subsequent communications relating thereto) to Lender. All such Leases and the amounts due to Mortgagor thereunder are hereby assigned to Lender as additional security for the Obligations.

**7. COLLECTION OF INDEBTEDNESS FROM THIRD PARTY.** Lender shall be entitled to notify or require Mortgagor to notify any third party (including, but not limited to, lessees, licensees, governmental authorities and insurance companies) to pay Lender any indebtedness or obligation owing to Mortgagor with respect to the Property (cumulatively "Indebtedness") whether or not a default exists under this Mortgage. Mortgagor shall diligently collect the Indebtedness owing to Mortgagor from these third parties until the giving of such notification. In the event that Mortgagor possesses or receives possession of any instruments or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Indebtedness or the payment of any insurance or condemnation proceeds, Mortgagor shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required, to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral, or otherwise settle any of the Indebtedness whether or not an Event of Default exists under this Mortgage. Lender shall not be liable to Mortgagor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Notwithstanding the foregoing, nothing herein shall cause Lender to be deemed a mortgagee-in-possession.

**8. USE AND MAINTENANCE OF PROPERTY.** Mortgagor shall take all actions and make any repairs needed to maintain the Property in good condition. Mortgagor shall not commit or permit any waste to be committed with respect to the Property. Mortgagor shall use the Property solely in compliance with applicable law and insurance policies. Mortgagor shall not make any alterations, additions or improvements to the Property without Lender's prior written consent, which may be granted or withheld at the sole discretion of Lender. Without limiting the foregoing, all alterations, additions and improvements made to the Property shall be subject to the beneficial interest belonging to Lender, shall not be removed without Lender's prior written consent, and shall be made at Mortgagor's sole expense.

**9. LOSS OR DAMAGE.** Mortgagor shall bear the entire risk of any loss, theft, destruction or damage (cumulatively "Loss or Damage") to the Property or any portion thereof from any cause whatsoever. In the event of any Loss or Damage, Mortgagor shall, at the option of Lender, repair the affected Property to its previous condition or pay or cause to be paid to Lender the decrease in the fair market value of the affected Property.

**10. INSURANCE.** The Property will be kept insured for its full insurable value (replacement cost) against all hazards including loss or damage caused by flood, earthquake, tornado and fire, theft or other casualty to the extent required by Lender. Mortgagor may obtain insurance on the Property from such companies as are acceptable to Lender in its sole discretion. The insurance policies shall require the insurance company to provide Lender with at least ___10___ days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a loss payee, or additional insured as Lender may require, and provide that no act or omission of Mortgagor or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Property. In the event Mortgagor fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Property and the insurance cost shall be an advance payable and bearing interest as described herein and secured hereby. Mortgagor shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-fact for Mortgagor in making and settling claims under insurance policies, cancelling any policy or endorsing Mortgagor's name on any draft or negotiable instrument drawn by any insurer. All such insurance policies shall be immediately assigned, pledged and delivered to Lender as further security for the Obligations. In the event of loss, Mortgagor shall immediately give Lender written notice and Lender is authorized to make proof of loss. Each insurance company is directed to make payments directly to Lender instead of to Lender and Mortgagor. Lender shall have the right, at its sole option, to apply such monies toward the Obligations or toward the cost of rebuilding and restoring the Property. Any amounts may at Lender's option be applied in the inverse order of the due dates thereof.

**11. ZONING AND PRIVATE COVENANTS.** Mortgagor shall not initiate or consent to any change in the zoning provisions or private covenants affecting the use of the Property without Lender's prior written consent. If Mortgagor's use of the Property is or becomes a nonconforming use under any zoning provision, Mortgagor shall not cause or permit such use to be discontinued or abandoned without the prior written consent of Lender. Mortgagor will immediately provide Lender with written notice of any proposed changes to the zoning provisions or private covenants affecting the Property.

**12. CONDEMNATION.** Mortgagor shall immediately provide Lender with written notice of any actual or threatened condemnation or eminent domain proceeding pertaining to the Property. All monies payable to Mortgagor from such condemnation or taking are hereby assigned to Lender and shall be applied first to the payment of Lender's attorneys' fees, legal expenses and other costs (including appraisal fees) in connection with the condemnation or eminent domain proceedings and then, at the option of Lender, to the payment of the Obligations or the restoration or repair of the Property.

**13. LENDER'S RIGHT TO COMMENCE OR DEFEND LEGAL ACTIONS.** Mortgagor shall immediately provide Lender with written notice of any actual or threatened action, suit, or other proceeding affecting the Property. Mortgagor hereby appoints Lender as its attorney-in-fact to commence, intervene in, and defend such actions, suits, or other legal proceedings and to compromise or settle any claim or controversy pertaining thereto. Lender shall not be liable to Mortgagor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Nothing contained herein will prevent Lender from taking the actions described in this paragraph in its own name.

**14. INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Mortgagor's obligations with respect to the Property under any circumstances. Mortgagor shall immediately provide Lender with written notice of and indemnify and hold Lender and its shareholders, directors, officers, employees and agents harmless from all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (cumulatively "Claims") pertaining to the Property (including, but not limited to, those involving Hazardous Materials). Mortgagor, upon the request of Lender, shall hire legal counsel to defend Lender from such Claims, and pay the attorneys' fees, legal expenses and other costs incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Mortgagor's cost. Mortgagor's obligation to indemnify Lender under this paragraph shall survive the termination, release or foreclosure of this Mortgage.

000605;13950

OR BK 30367 PG 1471

**15. TAXES AND ASSESSMENTS.** Mortgagor shall pay all taxes and assessments relating to the Property when due and immediately provide Lender evidence of payment of same. Upon the request of Lender, Mortgagor shall deposit with Lender each month one-twelfth (1/12) of the estimated annual insurance premium, taxes and assessments pertaining to the Property. So long as there is no default, these amounts shall be applied to the payment of taxes, assessments and insurance as required on the Property. In the event of default, Lender shall have the right, at its sole option, to apply the funds so held to pay any taxes or against the Obligations. Any funds applied may, at Lender's option, be applied in reverse order of the due date thereof.

**16. INSPECTION OF PROPERTY, BOOKS, RECORDS AND REPORTS.** Mortgagor shall allow Lender or its agents to examine and inspect the Property and examine, inspect and make copies of Mortgagor's books and records pertaining to the Property from time to time. Mortgagor shall provide any assistance required by Lender for these purposes. All of the signatures and information contained in Mortgagor's books and records shall be genuine, true, accurate and complete in all respects. Mortgagor shall note the existence of Lender's beneficial interest in its books and records pertaining to the Property. Additionally, Mortgagor shall report, in a form satisfactory to Lender, such information as Lender may request regarding Mortgagor's financial condition or the Property. The information shall be for such periods, shall reflect Mortgagor's records at such time, and shall be rendered with such frequency as Lender may designate. All information furnished by Mortgagor to Lender shall be true, accurate and complete in all respects, and signed by Mortgagor if Lender requests.

**17. ESTOPPEL CERTIFICATES.** Within ten (10) days after any request by Lender, Mortgagor shall deliver to Lender, or any intended transferee of Lender's rights with respect to the Obligations, a signed and acknowledged statement specifying: (a) the outstanding balance on the Obligations; and (b) whether Mortgagor possesses any claims, defenses, set-offs or counterclaims with respect to the Obligations and, if so, the nature of such claims, defenses, set-offs or counterclaims. Mortgagor will be conclusively bound by any representation that Lender may make to the intended transferee with respect to these matters in the event that Mortgagor fails to provide the requested statement in a timely manner.

**18. EVENT OF DEFAULT.** An Event of Default will occur under this Mortgage in the event that Mortgagor, Borrower or any guarantor of any Obligations:
(a) commits fraud or makes a material misrepresentation at any time in connection with the Obligations or this Mortgage;
(b) fails to meet the repayment terms of the Obligations for any outstanding balance; or
(c) by any action or inaction, adversely affects the Property, or any right of Lender in such Property, including, but not limited to, transfer of title to or sale of the Property without the permission of Lender, failure to maintain required insurance or to pay taxes on the Property, allowing the filing of a lien senior to that held by Lender, death of the sole Borrower obligated under the Obligations, allowing the taking of the Property through eminent domain, or allowing the Property to be foreclosed by a lienholder other than Lender. In addition, an Event of Default shall occur if, as a result of any of the following, the Property, or any right of the Lender in the Property, is adversely affected: the Borrower, Mortgagor or any guarantor of any Obligations commits waste or otherwise destructively uses or fails to maintain the Property, uses the Property in an illegal manner which may subject the Property to seizure, or moves from the Property; a judgment is filed against the Borrower, Mortgagor or any guarantor of any Obligation; or one of two Borrowers obligated under the Obligations dies.

**19. RIGHTS OF LENDER ON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default under this Mortgage, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):
(a) to declare the Obligations immediately due and payable in full; such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;
(b) to collect the outstanding Obligations with or without resorting to judicial process;
(c) to require Mortgagor to deliver and make available to Lender any personal property or Chattels constituting the Property at a place reasonably convenient to Mortgagor and Lender;
(d) to collect all of the rents, issues, and profits from the Property from the date of default through the expiration of the last redemption period following the foreclosure of this Mortgage;
(e) to apply for and obtain the appointment of a receiver for the Property without regard to Mortgagor's financial condition or solvency, the adequacy of the Property to secure the payment or performance of the Obligations, or the existence of any waste to the Property;
(f) to pay any sums in any form or manner deemed expedient by Lender to protect the security of this Mortgage or to cure any default other than payment of interest or principal on the Obligations;
(g) to foreclose this Mortgage;
(h) to set-off Mortgagor's Obligations against any amounts owed Mortgagor by Lender including, but not limited to, monies, instruments, and deposit accounts maintained with Lender or any currently existing or future affiliate of Lender; and
(i) to exercise all other rights available to Lender under any other written agreement or applicable law.
Lender's rights are cumulative and may be exercised together, separately, and in any order. In the event that Lender institutes an action seeking the recovery of any of the Property by way of a prejudgment remedy in an action against Mortgagor, Mortgagor waives the posting of any bond which might otherwise be required. Lender or Lender's designee may purchase the Property at any sale. The Property or any part thereof may be sold in one parcel, or in such parcels, manner or order as Lender in its sole discretion may elect.

**20. CONDOMINIUM COVENANTS.** If the Property comprises a unit in and together with an undivided interest in the common elements of a condominium, Mortgagor shall: (a) promptly pay, when due, all assessments imposed by the Owner Association or other governing body of the condominium project pursuant to the provisions of the declaration, by-laws, code of regulations or other constituent document thereof; and (b) except with Lender's prior written consent, not partition or subdivide the Property or consent to (i) the abandonment or termination of the condominium project; (ii) any material amendment to the declarations, by-laws, code or regulations or other constituent document of the condominium project including, but not limited to, any amendment which would change the percentage interest of the unit owners in the condominium project; or (iii) any proposal to terminate professional management and assume self-management of the condominium project. If the condominium project maintains a "master" or "blanket" policy on condominium projects which provides insurance coverage against hazards included within the term "extended coverage" and such hazards as Lender may require, and in such amount and for such period as Lender may require, then the provisions herein regarding the application of hazard insurance proceeds shall be superseded by any provision of the declarations, by-laws, code of regulations or constituent document of the condominium project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions herein.

**21. REIMBURSEMENT OF AMOUNTS EXPENDED BY LENDER.** Lender, at Lender's option, may expend funds (including attorneys' fees and legal expenses) to perform any act required to be taken by Mortgagor or to exercise any right or remedy of Lender under this Mortgage. Upon demand, Mortgagor shall immediately reimburse Lender for all such amounts expended by Lender together with interest thereon at the lower of the highest rate described in any Obligation or the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations herein and shall be secured by the beneficial interest granted herein. If the Obligations are paid after the beginning of publication of notice of sale, as herein provided, or in the event Lender shall, at its sole option, permit Mortgagor to pay any part of the Obligations after the beginning of publication of notice of sale, as herein provided, then, Mortgagor shall pay on demand all expenses incurred by the Lender in connection with said publication, including reasonable attorneys' fees to the attorneys for the Lender, and this Mortgage shall be security for all such expenses and fees.

**22. APPLICATION OF PAYMENTS.** All payments made by or on behalf of Mortgagor may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Mortgage and then to the payment of the remaining Obligations in whatever order Lender chooses.

**23. POWER OF ATTORNEY.** Mortgagor hereby appoints Lender as its attorney-in-fact to endorse Mortgagor's name on all instruments and other documents pertaining to the Obligations or Mortgage. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Mortgagor under this Mortgage. Lender's performance of such action or execution of such documents shall not relieve Mortgagor from any Obligation or cure any default under this Mortgage. The powers of attorney described in this Mortgage are coupled with an interest and are irrevocable. Mortgagor hereby authorizes Lender to contact any third party and make any inquiry pertaining to Mortgagor's financial condition or the Property. In addition, Lender is authorized to provide oral or written notice of its interest in the Property to any third party.

**24. SUBROGATION OF LENDER.** Lender shall be subrogated to the rights of the holder of any previous lien, security interest or encumbrance discharged with funds advanced by Lender regardless of whether these liens, security interests or other encumbrances have been released of record.

**25. COLLECTION COSTS.** To the extent permitted by law, Owner agrees to pay on demand Lender's reasonable fees and costs, including, but not limited to, fees and costs of attorneys or other agents (including without limitation, paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing or protecting any right or remedy under this Mortgage, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions.

**26. PARTIAL RELEASE.** Lender may release its interest in a portion of the Property by executing and recording one or more partial releases without affecting its interest in the remaining portion of the Property.

**27. MODIFICATION AND WAIVER.** The modification or waiver of any of Mortgagor's obligations or Lender's rights under this Mortgage must be contained in a writing signed by Lender. Lender may perform any of Borrower's or Mortgagor's obligations, delay or fail to exercise any of its rights or accept payments from Mortgagor or anyone other than Mortgagor without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion. Mortgagor's obligations under this Mortgage shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the obligations belonging to any Mortgagor, Borrower or third party or any of its rights against any Mortgagor, Borrower or third party or any of the Property. Lender's failure to insist upon strict performance of any of the obligations shall not be deemed a waiver, and Lender shall have the right at any time thereafter to insist upon strict performance.

**28. SUCCESSORS AND ASSIGNS.** This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

OR BK 30367 PG 1472

29. **NOTICE.** Except as otherwise required by law, any notice or other communication to be provided under this Mortgage shall be in writing and mailed to the parties at the addresses described in this Mortgage or such other address as the parties may designate in writing from time to time. Any such notice so given and sent by first class mail, postage prepaid, shall be deemed given the earlier of three (3) days after such notice is sent or when received by the person to whom such notice is being given.

30. **SEVERABILITY.** Whenever possible, each provision of this Mortgage shall be interpreted so as to be effective and valid under applicable state law. If any provision of this Mortgage violates the law or is unenforceable, the rest of the Mortgage shall continue to be valid and enforceable.

31. **APPLICABLE LAW.** This Mortgage shall be governed by the laws of the state where the Property is located. Unless applicable law provides otherwise, Mortgagor consents to the jurisdiction and venue of any court selected by Lender, in its sole discretion, located in that state.

32. **NO THIRD-PARTY RIGHTS.** No person is or shall be a third-party beneficiary of any provision of the Mortgage. All provisions of the Mortgage in favor of Lender are intended solely for the benefit of Lender, and no third party shall be entitled to assume or expect that Lender will waive or consent to the modification of any provision of the Mortgage, in Lender's sole discretion.

33. **PRESERVATION OF LIABILITY AND PRIORITY.** Without affecting the liability of Borrower, Mortgagor, or any guarantor of the Obligations, or any other person (except a person expressly released in writing) for the payment and performance of the Obligations, and without affecting the rights of Lender with respect to any Property not expressly released in writing, and without impairing in any way the priority of this Mortgage over the interest of any person acquired or first evidenced by recording subsequent to the recording of this Mortgage, Lender may, either before or after the maturity of the Obligations, and without notice or consent: release any person liable for payment or performance of all or any part of the Obligations; make any agreement altering the terms of payment or performance of all or any part of the Obligations; exercise or refrain from exercising or waive any right or remedy that Lender may have under this Mortgage; accept additional security of any kind for any of the Obligations; or release or otherwise deal with any real or personal property securing the Obligations. Any person acquiring or recording evidence of any interest of any nature in the Property shall be deemed, by acquiring such interest or recording any evidence thereof, to have consented to all or any such actions by Lender.

34. **MISCELLANEOUS.** Time is of the essence in the performance of this agreement. Mortgagor waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Mortgagor in this Mortgage shall include all persons signing below. If there is more than one Mortgagor, their Obligations shall be joint and several. This Mortgage represents the complete integrated understanding between Mortgagor and Lender pertaining to the terms and conditions hereof.

35. **JURY TRIAL WAIVER. LENDER AND MORTGAGOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS MORTGAGE.**

36. **ADDITIONAL TERMS:**

Mortgagor acknowledges that Mortgagor has read, understands, and agrees to the terms and conditions of this Mortgage, and acknowledges receipt of an exact copy of same.

Dated this __13th__ day of __March, 2000__.

WITNESSES: _/s/_   MORTGAGOR: THOMAS NAROG

SIGNATURE

_/s/ Carmen_
_/s/ A. De La___

THOMAS NAROG
6 CASTLE HARBOR ISLE
FT LAUDERDALE, FL 33308
MORTGAGOR:

MORTGAGOR:

MORTGAGOR:

MORTGAGOR:

MORTGAGOR:

MORTGAGOR:

LPFL5050 © John H. Harland Co. (8/21/97) (800) 937-3799                                              Page 4 of 5

000605 513950

OR BK 30367 PG 1473

STATE OF FLORIDA,  COUNTY OF __BROWARD__

The foregoing instrument was acknowledged before me this __3-13-2000__ by __Thomas Narog__

who are personally known to me or who have produced __Known__ as identification.

Aldo De La Noval
My Commission CC748757
Expires July 20, 2002

_A. De La Nval_
Notary Public

STATE OF FLORIDA,  COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ by _____

who are personally known to me or who have produced _____ as identification.

Notary Public

STATE OF FLORIDA,  COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ by _____

who are personally known to me or who have produced _____ as identification.

Notary Public

STATE OF FLORIDA,  COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ by _____

who are personally known to me or who have produced _____ as identification.

Notary Public

## SCHEDULE A

The following described real property located in the County of __BROWARD__, State of Florida:

The street address of the Property (if applicable) is: 8 CASTLE HARBOR ISLE
FT LAUDERDALE, FL 33308

The legal description of the Property is:
LOT 2, BLOCK "D", BERMUDA RIVIERA SUBDIVISION OF GALT OCEAN MILE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 38 AT PAGE 46 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

The permanent tax identification number of the Property is:

## SCHEDULE B

NONE

THIS DOCUMENT WAS PREPARED BY: Anna Haughbrook

After Recordation Return to:
SunTrust Bank
1501 NE 26th Street
Fort Lauderdale, FL 33305