UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO.: **00-6211-CR-Hurley**

UNITED STATES OF AMERICA,

        Plaintiff,

vs

**THOMAS NAROG, et. al.,**

        Defendant.
_____/

### MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**COMES NOW** the Defendant, and moves the Court to suppress as evidence at the trial all physical evidence, statements and observations obtained in the above-styled cause, including but not limited to all of the contents of the "Shurgard" storage facility attributed to the defendant herein, plus those statements physical evidence and videotaped observations seized by the government as "fruit of the poisonous tree". As grounds therefore, the Defendant would state:

    1.    On March 29, 2000, a team of DEA agents and police officers began a secret surveillance of the Defendant and his storage facilities, which were located inside the Shurgard storage complex at 1650 West Oakland Park Boulevard.

    2.    The Shurgard complex is a private facility surrounded by a windowless, 12 foot high perimeter wall. To enter, an individual may enter a courtyard to access the administrative offices. However, access to the storage area is restricted by a guard gate to only those allowed access by the front office.

    3.    In order to observe the inside of the restricted area, government agents used



what were described at "pole cameras." See testimony of Special Agent Baker, trial transcript pages 715-717. A pole camera was described by Agent Baker as a "concealed video recording unit." Id. at 716. The agents monitored the feed from the pole cameras from some distance away, from a room at a nearby Days Inn. The activities seen and recorded inside the wall of the Shurgard complex were otherwise not visible from the Days Inn.

4. The agents did not obtain a search warrant to conduct the search and seizure described above. The electronic monitoring above continued until after the "undercover" questioning of Mr. Narog by Agent Baker on July 13th, 2000. The illegal surveillance above uncovered observations that other storage facilities were being accessed by Mr. Narog and used to store pseudoephedrine. These observations led to the formulation of questions by the agents, posing as "diversion investigators", which were asked of Mr. Narog on July 13th. Mr. Narog's denial of the possession of pseudoephedrine on that day ultimately led to his arrest, since the agents knew from their illegal monitoring that parcels had been transferred from storage unit 1352 to units 206 and 207. After this by Agent Baker then questioned Narog about the movements Baker observed from his electronic monitoring of the inside of the storage facility. Baker then generated the affidavit used to obtain the search warrant executed on July 29, 2000.

5. Generally, the government may not employ an electronic device to obtain information in an area where one has a reasonable expectation of privacy that could not be gained through sensory observation. See U.S. v. Karo, 468 U.S. 705, 715 (1984); U.S. v. Knotts, 460 U.S. 276 (1983). A reasonable expectation of privacy has been recognized to exist for storage lockers and warehouses. See Karo, supra, pg. 721 fn 6.

6. By failing to obtain a search warrant to conduct the above electronic search and the

resulting seizure of videotape images, the exclusionary rule applies. Without these images, the existence of units 206 and 207 would not have been known to the agents. Mr. Narog's denials of possession of further pseudoephedrine would not have been inculpatory. Further, no grounds for a search warrant of units 1352 and units 206 and 207 would have existed. Therefore, "the fruit of the poisonous tree" herein includes: a) all video taped images taken from the pole cameras, including all observations by the agents of those images, b) the taped recorded statement of Mr. Narog on July 13, 2000 during which he was questioned about the movements observed on the videotapes, c)the observations leading to the following of subjects from Shurgard to a townhouse at Boynton Beach and all physical evidence therein, and d) all physical evidence seized from the search warrant executed on July 29, 2000.

7. Other grounds to be argued Ore-Tenus.

**WHEREFORE**, the defendant requests the entry of an Order suppressing the observations and physical evidence seized as a result of the illegal search outlined above, as well as all evidence specifically described in paragraph 6 above.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was furnished to Assistant United States Attorney, 500 Australian Ave., Suite 400, West Palm Beach, Florida 33401; this ___ day January, 2005.

KEVIN J. KULIK
Attorney for Defendant
Suite 500
600 South Andrews Avenue
Ft. Lauderdale, FL 33301
(954) 761-9411

BY: _____
Kevin J. Kulik
Fla. Bar No: 475841